**ELLIOTT ASSOCIATES, on behalf of itself and all other holders of the 10% Convertible Subordinated Debentures of Centronics Data Computer Corp. similarly situated, Plaintiff,**

v.

**J. HENRY SCHRODER BANK & TRUST COMPANY and Centronics Data Computer Corp., Defendants.**

**No. 86 Civ. 3725 (LBS).**

United States District Court, S.D. New York.

March 17, 1987.

Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, for plaintiff; Norris D. Wolff, of counsel.

Hawkins, Delafield & Wood, New York City, for defendant Schroder; W. Cullen MacDonald, Katherine A. Gabbay, of counsel.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, for defendant Centronics; Richard P. Swanson, Laura A. Proske, of counsel.

## OPINION

SAND, District Judge.

This case presents an important question that touches on the obligations of indenture trustees in performing duties assigned to them in a trust indenture. Plaintiff, a holder of certain convertible debentures, sues on a number of theories both the trustee and the company that issued the debentures. In essence, plaintiff claims that the trustee, in conspiracy with the company, acted to enrich the company at the expense of the debenture holders by saving the company from an impending obligation to make a substantial semi-annual interest payment to holders of record as of a certain date.

The conspiracy was carried out, plaintiff claims, by the trustee's decision, allegedly made in bad faith at the company's urging, to accept less than the full period of redemption notice to which the trustee was entitled under the indenture. Defendants deny liability and assert that their actions were authorized by the relevant contractual provisions and permissible under the governing legal principles.

By consent of all parties, this case has been decided by the Court based on the facts, affidavits and documents set forth in a stipulated record submitted by the parties for judicial resolution of the underlying controversy on the merits. Although in a strict sense, a bench trial was not held, the parties agreed, *inter alia*, that "the Court shall be free to resolve any disputed factual matters and to draw any inferences from the exhibits and/or affidavits submitted to

the Court with the same force and effect as if this action were tried in open court...." *See* Stipulation and Order, attached to this Opinion as Exhibit A.

As this Opinion indicates, the parties have stipulated to most of the relevant facts but sharply dispute their legal significance. The following constitutes our findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

### Findings of Fact

At all times relevant hereto, plaintiff Elliott Associates ("Elliott"), a New Jersey limited partnership, was the holder of $525,000 principal amount of certain 10% Convertible Subordinated Debentures due June 1, 1990 ("Debentures"), which were issued by defendant Centronics Data Computer Corp. ("Centronics"), pursuant to a trust indenture ("Indenture"), between Centronics and defendant J. Henry Schroder Bank and Trust Company ("Schroder"), as trustee ("Trustee"). Centronics is a Delaware corporation with its principal offices in New Hampshire. Defendant Schroder is a New York corporation with its principal offices in New York.

On March 12, 1986, George Sievers, the Senior Vice President in charge of Schroder's corporate trust department, received a telephone call from Neil R. Gordon, the manager of treasury services for Centronics. Gordon told Sievers that Centronics "was contemplating redemption of its outstanding" Debentures subject to certain conditions, including the receipt of applicable clearances from the Securities and Exchange Commission and stability in the market for Centronics common stock. *See* affidavit of Neil R. Gordon, ¶ 2. During the conversation, Gordon asked Sievers how much time Schroder would need to perform its services in connection with the contemplated redemption. This inquiry was presumably occasioned by the requirement in Section 3.01 of the Indenture that Centronics provide notice to the Trustee of the date of redemption and the principal amount of Debentures to be redeemed "at least 50 days (unless a shorter notice shall be satisfactory to the Trustee)" before the redemption date. Specifically, it appears that in planning the redemption Centronics wanted to know whether Schroder would need the full 50 days or would be satisfied with "shorter notice."

Schroder, through Sievers, responded to the effect that in the case of a total redemption, Schroder "would need only a week to prepare the notices for a redemption, since there were less than two dozen holders to be notified." *See* affidavit of George Sievers at ¶ 2. Gordon's affidavit and his diary entries from March 12, 1986 tend to corroborate that the telephone conversation of that date occurred substantially as we have described it.

Approximately a week later, on March 20, 1986, the Board of Directors of Centronics met and approved redemption of all outstanding Debentures. *See* Stipulation at Exhibit 8. By letter dated April 4, 1986, subsequent to the Sievers-Gordon conversation and board approval of the redemption, Robert Stein, the president of Centronics, informed Schroder that "[p]ursuant to the terms of the Indenture, notice is hereby given that the Company will redeem all of its outstanding 10% Convertible Subordinated Debentures due June 15, 1990, on May 16, 1986." *See* Stipulation at Exhibit 5.

Work on the securities law aspects of the redemption proceeded thereafter, and on or about April 8, 1986, Centronics submitted draft S–3 registration materials to the SEC in connection with the redemption. The S–3 was cleared on May 1, 1986.

That same day, a notice of redemption and a letter of transmittal, both dated May 1, 1986, were mailed to holders of the outstanding Debentures. Then, by letter dated May 2, 1986, Stein confirmed to Schroder that the notice to the Trustee "was given as of April 4, 1986." Subsequently, Centronics provided Schroder with an officer's certificate in which the signatory officers certified to Schroder that in their opinion "all conditions precedent provided for in the Indenture relating to the proposed redemption had been complied with." *See* Stipulation at Exhibit 8.

Schroder apparently was satisfied with the notice it had received. In Schroder's

view, the "shorter notice" which Centronics had furnished was adequate because it left Schroder with sufficient time to perform its pre-redemption administrative tasks. *See* affidavit of George R. Sievers at ¶ 7.

The letter of transmittal that accompanied the May 1, 1986 notice of redemption issued to Debenture holders urged the holders to consider the alternatives to redemption which were available prior to the close of business on May 15, 1986. Specifically, Centronics informed the holders that the company believed that "it is to your advantage to convert your Debentures into common stock so long as the market price of the Common Stock is greater than $3¾ per share (without taking into consideration sales expense) through May 15, 1986, since you will receive upon conversion of your Debentures common stock having a greater quoted market value than the amount of cash which would otherwise be received by you if you had sold the Debentures to the purchaser or surrendered the Debentures for redemption." The notice of redemption pointed out that those Debentures which were not converted into common stock by the close of business on May 15, 1986, the conversion termination date, would be automatically redeemed as of May 16, 1986, on which date the redemption price would become due and payable and all interest would cease to accrue. Conversion rights, of course, would no longer apply.

Elliott elected to convert. As of May 15, 1986, the last day for conversion, conversion from creditor to shareholder status was indeed the economically most profitable alternative. Since the market price of Centronics common stock had risen to $6⅝ per share on that day, each $1,000 Debenture was convertible into approximately $2,038 worth of common stock. *See* Stipulated Facts at Paragraph 8. By contrast, a $1,000 Debenture surrendered for redemption the next day, the redemption date, would have yielded approximately $1,146.11, representing a redemption price of $1,100 plus accrued interest of $46.11 from December 1, 1985, to May 16, 1986.

The foregoing findings of fact, with the possible exception of our characterization of what transpired in the March 12, 1986 telephone discussion between Sievers and Gordon, are essentially undisputed. The propriety of the actions of Schroder and Centronics in connection with the redemption, however, is not, and we therefore turn to the disputed legal issues.

*Conclusions of law*

I. *Jurisdiction*

Jurisdiction is predicated on the Trust Indenture Act of 1939, 15 U.S.C. §§ 77aaa–77bbbb (the "Trust Indenture Act"), diversity of citizenship, 28 U.S.C., Section 1332(a)(1), and principles of pendent jurisdiction.

II. *Class Certification is Denied*

Elliott filed this action "on behalf of itself and all other holders of the 10% Convertible Subordinated Debentures of Centronics Data Computer Corp. similarly situated." Pending at the time of the submission of the stipulated record was Elliott's motion for class certification, a motion which defendants oppose on a number of grounds. We resolve this threshold application at the outset based on the special circumstances of this case before setting forth our conclusions of law with respect to Elliott's primary claims.

It is settled that the party seeking class certification bears the burden of proving that it has satisfied the requirements of F.R.Civ.P. Rule 23.7A Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d., § 1759 (1986). The first prerequisite to a class action set forth in Rule 23(a) provides that a member of a putative class may sue as a representative party "on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable." In the circumstances of this case, we do not believe that Elliott has established that joinder is impracticable.

Elliott claims that as of May 1, 1986, there were at least 23 record Debenture holders, including brokerage firms who were, like Elliott, faced with the prospect of a "premature" conversion. *See* Memo-

randum of Law in Support of Plaintiff's Motion for Class Certification at 8. As of May 12, 1986, at least 47 record holders held all of the outstanding Debentures representing a principal amount of nearly $25 million. *See* Stipulated Facts at 9, 25. This group of 47, however, included a number of parties aligned with Centronics, such as (i) 12 individual officers, employees or directors of Centronics, and (ii) Control Data Corp., an entity which held $7 million of the Debentures, approximately 28 percent of those outstanding. On May 13, 1986, Control Data's holdings were sold to entities known as Natbay and Waruda, two Canadian investment companies, which subsequently converted the entire $7 million principal amount into shares of Centronics common stock. The parties have stipulated, and Natbay and Waruda have indicated in submissions to the Court, that the two Canadian companies would opt out from any class certified in this action.

Elliott points to a number of general factors, including class size, geographical location of class members, and the size of individual claims, as considerations that bear on a court's determination of whether the Rule 23(a)(1) prerequisites have been satisfied. The factors Elliott adduces, however, do not support the conclusions Elliott urges upon the Court in this case. The ultimate issue, of course, is whether joinder is impracticable. In this case, Elliott has failed to establish that joinder would not be an available and appropriate avenue for the adjudication of the claims that putative class members may have. In particular, Elliott has not demonstrated—and it appears unlikely that Elliott could demonstrate, given the substantial principal amount of outstanding Debentures and the small number of record holders—that the size of the individual claims class members would have against the defendants is so insignificant that joinder would be impracticable. Nor has Elliott demonstrated that the potential class members are geographically dispersed. Finally, it has not been established that the class is sufficiently numerous in the context of this case that joinder is an unavailable alternative to class action certification.

In dealing with the issue of numerosity, we deal with it not in absolute numbers, but in the relationship of the numbers of putative class members involved to their economic interests and all of the other circumstances peculiar to this case. Based on our conclusion that Elliott has failed to meet the prerequisite to a class action set forth in Rule 23(a)(1), we deny the motion for class certification. We need not address, therefore, whether, as defendants claim, Elliott has failed to meet the burden of satisfying the other prerequisites of Rule 23(a) and the conditions set forth in Rule 23(b).

### III. *The Complaint*

It is important at the outset to set forth what is not at issue in this lawsuit. Plaintiff does not contend that the holders of the Debentures received insufficient notice of the redemption. The Indenture provides at Section 3.03 that "at least 15 days but not more than 60 days before a redemption date, [Centronics] shall mail a notice of redemption by first-class mail to each Holder of Securities to be redeemed." In addition, the Indenture mandates that the notice of redemption given to the Trustee set forth certain specified facts. We emphasize that there is no allegation in this action that the Debenture holders received untimely notice or that the Section 3.03 notice was substantively insufficient.

The gravamen of Elliott's five-count complaint is that defendants Schroder and Centronics conspired to time the redemption so that the Debenture holders were wrongfully compelled "to prematurely convert their debentures into common stock," i.e., before the close of business on May 15, 1986. *See* Verified Complaint at ¶ 18. Specifically, Elliott claims that if Schroder had "refused to waive" the 50-day notice from Centronics to which Schroder was entitled under the Indenture, the Debenture holders would have received six months of interest which plaintiff claims would have been payable on June 1, 1986 to all holders of record as of the close of business on May 15, 1986. *See* Verified Complaint at ¶ 19. Plaintiff reasons that if Schroder had insisted on 50-day notice, the

redemption date would have fallen on a day subsequent to the next scheduled record date, and plaintiff would not only have been able to convert at a large profit, but also would have been entitled to interest payable as of the May 15 record date. Schroder's failure to follow this scenario, that is, to allow the redemption to take place only after the full 50-day notice period had expired, according to Elliott, was motivated by Schroder's desire to curry favor with Centronics and other issuers of corporate debt. *See* Verified Complaint at ¶¶ 21 through 23.

Count 1 of the Verified Complaint, which is asserted against both Schroder and Centronics, seeks a declaratory judgment that the waiver of the 50–day notice and the subsequent redemption were invalid and unlawful.[1] Count 2, based on the Trust Indenture Act, alleges that the defendant Schroder as Trustee "engaged in wilful misconduct and negligence in violation of Section 315 and 316 of the Trust Indenture Act" and Schroder's fiduciary duties to Debenture holders. *See* Verified Complaint at ¶ 52. Defendant Centronics is charged in count 2 with aiding and abetting Schroder's breaches and violations. Count 3 consists of a breach of contract claim brought against both Schroder and Centronics. This count alleges that Centronics breached the terms of the Indenture by failing to give the 50 days notice to Schroder. Schroder is charged with breaching the Indenture by waiving the 50-day notice without the consent of the holders. Count 4, which names only defendant Schroder, charges a breach of common law fiduciary duties. In count 5, which names both Schroder and Centronics as defendants, plaintiff claims that as a result of a "conspiracy between defendants, defendant Centronics has been unjustly enriched." Verified Complaint at ¶ 63.

### IV. *Causation of damages*

The core factual assumption that underlies plaintiff's complaint is that if Schroder,

as plaintiff claims was its duty, had insisted on the full 50-day notice from Centronics, then the Debenture holders would have been holders of record on May 15, 1986, and would have been entitled to receive accrued interest to that date even if they or others to whom they might have subsequently sold the Debentures tendered. the Debentures for conversion. If Schroder had followed what plaintiff asserts was the proper course, the redemption date would have fallen on or about May 24, 1986. This scenario throws into relief an important threshold issue in the case. There is in our view considerable doubt as to whether, apart from the validity or invalidity of the acts taken by Centronics and Schroder, plaintiff suffered any damage as a result of those acts.

The defendants argue that under Elliott's version of what should have occurred, any holders who tendered Debentures for conversion subsequent to May 15 but prior to the hypothetical May 24 redemption date would have thereby given up "all claims to any (accrued) interest." *See* transcript of oral argument, 86 Civ. 3725, January 27, 1987 ("Transcript"). It is the defendants' position that the language of the Indenture expressly supports the proposition that those holders who elect to convert their Debentures to common stock in the time interval subsequent to a regular record date but prior to a regular interest payment date or forced redemption date thereby relinquish any claim to accrued interest, notwithstanding the fact that such holders held the Debentures on a record date.

Specifically, the defendants refer to Section 11.02 of the Indenture, which provides in pertinent part that "no adjustment will be made for accrued interest on a converted Security or for dividends or distributions on Shares issued upon conversion of a Security." The defendants argue that this language means that the issuer has no obligation to pay any interest upon a post record date conversion—neither interest that accrued during the period prior to the

---

1. This court denied plaintiff's application in May 1986 for preliminary injunctive relief. *See*

transcript of proceedings at 17, 86 Civ. 3725, May 12, 1986.

regular record date nor interest that accrued subsequent to the record date and prior to conversion. This textual argument has some force, drawn from the absence from the Indenture of sample language drafted by the American Bar Foundation which is designed to give Debenture holders the right to receive accrued interest despite a conversion.[2]

The manner in which the record dates and interest payment dates are defined in the Indenture provides further support for Schroder's position. Although the Indenture sets forth May 15 as a record date, May 15, 1986, is not explicitly so designated. Rather, "the Regular Record Date" is defined in the Indenture in relation to the "Interest Payment Date" definition. Section 1.01 provides that the " 'regular record date' for the interest payment date means the fifteenth day of the month next preceding such Interest Payment Date." The interest payment date fixed in the Indenture includes June 1. *See* Indenture § 1.01 and Exhibit A thereto at A–1. But where bonds are called for redemption prior to a scheduled interest payment date, the issuer's obligation to make payments of all accrued interest matures as of the designated redemption date. Under this analysis, which Schroder's expert advocates, a subsequently occurring interest payment date would not, by virtue of the prior redemption, give rise to any obligations on the part of the issuer. A prior redemption, according to this argument, drains a later interest payment date of its operative force. "Since no obligation exists for payment of interest on an interest payment date on bonds called for prior redemption, there would be no record date for such payment." *See* R. Landau, **Corporate Trust Administration** at 261. That is, without a payment date there would be no actual record date. According to this argument, in the situation at bar the plaintiff

did not sustain an economic loss as a result of the defendants' actions.

Although, as we have stated, the defendants' position has some weight, it is not unproblematic. First, it is plausible that the Indenture provision that there shall be "no adjustment" for "accrued interest" upon conversion refers to the issuer's obligations with respect to any interest which may have accrued in the period subsequent to a record date but prior to conversion. That period, of course, could be as long as nearly six months, and the accrued interest could therefore be of considerable magnitude even for a holder of a relatively small number of Debentures.

An additional weakness in the defendants' argument is exposed by Centronics' course of conduct relevant to the redemption at issue here. It appears obvious that Centronics carefully timed the redemption date so that the holders who wished to convert the Debentures would have to do so prior to the close of business on May 15, 1986, which, at least under ordinary circumstances, would have been a "Regular Record Date," and which was, in this case, the day immediately preceding the redemption date. Centronics, of course, had the right to time its redemption so that no conversion could occur after a record date. That this goal seems to have informed Centronics' conduct, however, tends at least to undercut the theory that the contractual language on which the defendants rely expresses the intent of the parties that holders who convert after a scheduled regular record date and prior to an interest payment date thereby give up all claims to interest, whether accruing prior to a regular record date or subsequent thereto.

Assuming *arguendo* that Elliott's interpretation of the Indenture is correct in this regard and that plaintiff suffered an economic loss as a result of the defendants'

---

**2.** The sample language provides in pertinent part: "In case of any Debenture which is converted after any regular record date and on or prior to the next succeeding interest payment date, the interest falling due on such interest payment date shall be payable on such interest payment date notwithstanding such conversion, and such interest (whether or not punctually

paid or duly provided for) shall be paid to the person in whose name that Debenture (or any predecessor Debenture or Debentures) is registered at the close of business on such regular record date." American Bar Foundation, Commentaries on Model Debenture Indenture Provisions at 539.

actions, we have considered the merits of the allegations in the Verified Complaint. Our conclusion, discussed more fully below, is that the defendants are entitled to judgment on all counts in the Verified Complaint.

### V. *The Notice Requirements Satisfied Defendants' Legal Obligations*

Defendants assert that Centronics in fact gave Schroder 50-day notice of the redemption. They argue that Centronics gave the 50-day notice on March 12, 1986, in a telephone conversation between Sievers and Gordon. We do not agree that 50-day notice was given in this case. The March 12 conversation, which occurred prior to board approval of a redemption of all outstanding Debentures, was at the most notice that Centronics was considering a redemption. As we noted in our findings of fact, *supra,* Centronics itself repeatedly characterized its April 4, 1986 letter, not the March 12, 1986 telephone call, as the notice to the Trustee.[3]

■ The shorter notice of an intent to redeem that Centronics in fact gave Schroder was, in our view, adequate in the light of Schroder's acceptance of such shorter notice. Furthermore, Schroder's acceptance of the notice Centronics gave—its waiver of the right to insist on 50-day notice—was not a breach of a duty Schroder owed to Debenture holders. Indeed, in accepting the shorter notice, Schroder exercised a right to waive 50-day notice, a right which was explicitly conferred on the Trustee in the Indenture.

Section 3.01 of the Indenture, which provides that the 50–day notice period may be shortened, states that the shorter notice must be "satisfactory to the Trustee." This provision, we hold, is intended solely for the benefit of the Trustee, who has an array of administrative tasks which it may be called upon to perform prior to the redemption date, tasks which vary in scope and complexity depending on the nature of the redemption and the size of the group of holders to be selected and notified. The conclusion that Section 3.01 is designed to insure that the Trustee has adequate time to perform its functions is supported by its particular placement in the Indenture. The next succeeding section, Section 3.02, outlines the duties which the Trustee is obligated to perform under the Indenture after it has received the 3.01 notice. This juxtaposition suggests that the Trustee's notice is designed to dovetail with the Trustee's obligations as they are expected to arise in particular circumstances.

Moreover, the fact that there are specific provisions in the Indenture regarding the timing and substance of the redemption notice which the Debenture holders—as opposed to the Trustee—are entitled to receive suggests that the redemption notice provision at issue in this case was not included in the Indenture to benefit the Debenture holders. *See* Indenture at § 3.03. As we stated at the outset, there is no claim in this case that the notice which the Debenture holders received was anything other than satisfactory. Whatever expectations as to notice which plaintiff held were met when the notice of redemption was mailed on May 1, 1986.

Plaintiff relies principally on generalized assertions that an indenture trustee occupies a fiduciary position relative to debenture holders. From this generalization, plaintiff argues in effect that a trustee must carry out all of its functions, even those that are purely administrative, with a view toward what would be in the best interests of the debenture holders. This argument considerably overstates the nature of an indenture trustee's obligations. As the Second Circuit has observed:

"an indenture trustee is not subject to the ordinary trustee's duty of undivided loyal-

---

**3.** The defendants' contention that the oral communications could have constituted effective notice under the "notices" provision of Section 12.-02 of the Indenture is unpersuasive. Section 12.02 states, *inter alia,* that "any notice or communication shall be sufficiently given if in writing...." Although Section 12.02 is not a model of clarity, we do not share the defendants' view that a writing is not a necessary constituent of effective notice. In our view, the quoted language, complemented as it is by a detailed description of how notice is to be mailed, contains the implication that oral notice is insufficient.

ty. Unlike the ordinary trustee who has historic common law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement."

*See Meckel v. Continental Resources Co.*, 758 F.2d 811, 816 (2d Cir.1985) and cases cited therein.

Our inquiry, therefore, must be pointed toward those obligations which Schroder has assumed in the Indenture. This focus leads us back to the specific Indenture provisions which plaintiff has placed at issue in this case. And, for the reasons we have detailed, we do not believe that in exercising its contractual rights under Section 3.01, the Trustee was duty-bound to weigh the interests of the Debenture holders.

We note in this connection that even if Schroder were obligated to weigh the interests of the Debenture holders in determining whether to accept less than 50-day notice, the proper outcome of such an appraisal is not altogether clear. In hindsight, it may be true in this case that the Debenture holders would have benefited from a longer notice period. At the time notice was given to Schroder, however, that was not absolutely clear. One can hypothesize at least one chain of events which would have rendered unwise from the standpoint of Debenture holders a decision by the Trustee not to waive the 50-day notice to which it was entitled. It is possible, for example, that had the Trustee insisted on such notice, Centronics would have decided to withdraw its contemplated

redemption. If that had occurred, and if, after the point when the holders were to have received their notice—when a redemption offer would have become binding—the market price of Centronics common stock had plummeted, the loss of the opportunity to surrender the Debentures for a premium at the rate set forth in the Debenture would later be viewed as an unfortunate turn of events for those holders eager to convert their holdings into cash. We mention this only to emphasize that to compel the Trustee to factor in these and other similar considerations in advance of determining how much Section 3.01 notice to insist upon would create an undue burden on the Indenture Trustee as well as potential exposure to liability.

The foregoing analysis leads to the conclusion that all of the claims in the Verified Complaint must be dismissed. Schroder's decison to accept less than 50-day notice from Centronics falls within an express right which Schroder retained under the Indenture.[4] In exercising its discretion to accept such shorter notice, Schroder did not violate a duty which it owed to Debenture holders.[5] Nor did Centronics act improperly.

Accordingly, we hold that plaintiff is not entitled to a declaratory judgment that the redemption was invalid. We hold also that plaintiff has failed to establish the elements of the breach of contract and unjust enrichment and Trust Indenture Act claims asserted in the Verified Complaint.[6]

---

4. We do not share plaintiff's view that Schroder was under a contractual duty to consult with the Debenture holders prior to exercising its rights under Section 3.01.

5. Similarly, plaintiff has not established that the Trustee acted negligently or with bad faith.

6. In their submissions, Elliott and Centronics debate at length the defendants' assertion that Count 2 should be dismissed on the ground that the Trust Indenture Act does not create a private right of action in favor of bond holders. While this is a question that is indeed worthy of debate, we have agreed with Schroder that the resolution of this question makes "little practical difference" in the context of this case. *See* Schroder Post-Trial Brief at 10–11. Count 2 of

the Verified Complaint alleges that Schroder engaged in wilful misconduct and negligence in violation of Section 315 and 316 of the Trust Indenture Act. *See* Verified Complaint at ¶ 52. Centronics is charged with aiding and abetting Schroder's primary violations. *Id.* at ¶ 53. Indisputably, the primary question in the case is whether Schroder's waiver violated the terms of the Indenture or Schroder's duties as a Trustee. Our holding with respect to each of these issues is grounded in part on our findings that Schroder's acts did not constitute negligence or wilful misconduct. Thus, even if we were to conclude that plaintiff has a cause of action under the Trust Indenture Act, judgment would be entered for defendants on such a claim.

### VI. *The Counterclaims Are Dismissed*

 We decline, however, to enter judgment in favor of Centronics and Schroder on the counterclaims for costs and attorneys' fees which each has asserted pursuant to Section 7.11 of the Indenture, Section 315 of the Trust Indenture Act, and Rule 11 of the Federal Rules of Civil Procedure. Our analysis of the merits and the good faith nature of the claims asserted here leads us to the conclusion that this is not an appropriate case for the imposition of costs under the Indenture or Section 315 of the Trust Indenture Act. Similarly, we do not believe that the plaintiff "has demonstrated its bad faith" by litigating the intended meaning of Section 3.01 of the Indenture or by instituting an action without satisfying the conditions precedent set forth in Section 7.06 thereof. *See* Schroder Post-Trial Brief at 28.[7]

Complaint dismissed.

So Ordered.

### EXHIBIT A

IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned counsel of record for all of the parties herein, that this action is hereby fully submitted to the Court for a resolution of the controversy on the merits with the same force and effect as if it were tried in open Court. The Court shall be free to resolve any disputed factual matters and to draw any inferences from the exhibits and/or affidavits submitted to the Court with the same force and effect as if this action were tried in open Court before this Court. Each exhibit and/or affidavit submitted to the Court pursuant hereto shall be deemed admissible for all purposes in this action. This stipulation is for purposes of this action only and the facts set forth herein, and the exhibits and affidavits shall not be deemed admissible or an admission of fact for any other purpose or in any other action.

---

7. Because of our holding that the Verified Complaint must be dismissed on grounds that go to the heart of the allegations in this litigation, we have not found it necessary to resolve whether the Verified Complaint is deficient by virtue of Elliott's failure to satisfy certain conditions precedent to suit contained in Section 7.06. We address this issue only to consider the defendants' claim that plaintiff's noncompliance bears on points raised in the defendants' counterclaims for costs and fees. We are not persuaded that plaintiff's institution of this action without prior compliance with Section 7.06 was an act of "bad faith". *See* Schroder Post-Trial Brief at 28. The application of Section 7.06 to the circumstances at issue in this case is not so clear that it must be concluded that Elliott's actions were not in good faith. The structure of the Indenture as well as the specific language of Sections 7.06 and 7.01 suggest that the limitations to suit listed in the Indenture are geared to acts of Centronics which constitute a contractual "event of default." Although Centronics argues that Elliott's claim charges that an event of default occurred, *see* Transcript at 19, in our view this characterization is perhaps misplaced. The essence of the claim is not that plaintiff was entitled, given the critical dates in the redemption as it ultimately transpired, to be paid interest and that the payments were wrongfully withheld. Rather, the Verified Complaint alleges that there was a conspiracy between defendants to force a premature conversion which resulted in the denial of a right to a payment which the plaintiff would otherwise have enjoyed. In any event, the circumstances do not warrant the imposition of sanctions. *See* Schroder Post-Trial Brief at 28.