838 F.2d 66
 56 USLW 2496, Fed. Sec. L. Rep. P 93,614
 ELLIOTT ASSOCIATES, on behalf of itself and all other
holders of the 10% Convertible Subordinated
Debentures of Centronics Data Computer
Corp. similarly situated,
Plaintiff-Appellant,
Cross-Appellee,
v.
J. HENRY SCHRODER BANK & TRUST CO. and Centronics Data
Computer Corp., Defendants-Appellees, Cross-Appellants.
 Nos. 7, 67 and 68, Dockets 87-7258, 87-7364 and 87-7366.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 3, 1987.
Decided Feb. 1, 1988.
 
 Norris D. Wolff, New York City (Ronald D. Hariri, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, of counsel), for plaintiff-appellant, cross-appellee Elliott Associates.
 Richard P. Swanson, New York City (Laura A. Proske, Spengler Carlson Gubar Brodsky & Frischling, New York City, of counsel), for defendant-appellee, cross-appellant Centronics Data Computer Corp.
 W. Cullen MacDonald, New York City (Katherine A. Gabbay, Hawkins, Delafield & Wood, New York City, of counsel), for defendant-appellee, cross-appellant, J. Henry Schroder Bank & Trust Co.
 Robert B. Fiske, Jr., New York City (James L. Kerr, Thomas F. Godfrey, Davis Polk & Wardwell, New York City, of counsel), for amicus curiae Corporate Trust Committee of the Corporate Fiduciaries Ass'n of New York City.
 Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 This appeal involves an examination of the obligations and duties of a trustee during the performance of its predefault duties under a trust indenture, qualified under the Trust Indenture Act of 1939, 15 U.S.C. Sec. 77aaa et seq. (the "Act"). The instant action was brought by a debenture holder who sought to represent a class of all debenture holders under the trust indenture. The debenture holder alleged in its complaint that the trustee waived a 50-day notice period prior to the redemption of the debentures and did not consider the impact of the waiver on the financial interests of the debenture holders. The debenture holder alleged further that, had the trustee not waived the full 50-day notice period, the debenture holders would have been entitled to receive an additional $1.2 million in interest from the issuer of the debentures. The debenture holder therefore concludes that the trustee's waiver was improper and constituted a breach of the trustee's duties owed to the debenture holders under the indenture, the Act and state law.
 
 
 2
 The district court dismissed the debenture holder's action after conducting a bench trial and entered judgment in favor of the defendants. The district court held that the trustee's waiver did not constitute a breach of any duty owed to the debenture holders--under the indenture or otherwise--because, as the court found, a trustee's pre-default duties are limited to those duties expressly provided in the indenture. See 655 F.Supp. 1281, 1288-89 (S.D.N.Y.1987). We agree with the district court that no breach of duty was stated here. Accordingly, we affirm the district court's decision dismissing the action.
 
 FACTS and BACKGROUND
 
 3
 Appellant Elliott Associates ("Elliott") was the holder of $525,000 principal amount of 10% Convertible Subordinated Debentures due June 1, 1990 (the "debentures") which were issued by Centronics Data Computer Corporation ("Centronics") pursuant to an indenture between Centronics and J. Henry Schroder Bank and Trust Company ("Schroder"), as trustee. Elliott's debentures were part of an aggregate debenture offering by Centronics of $40,000,000 under the indenture which was qualified by the Securities Exchange Commission ("SEC") pursuant to the Act.
 
 
 4
 The indenture and debentures provided, inter alia, that Centronics had the right to redeem the debentures "at any time" at a specified price, plus accrued interest, but the indenture also provided that, during the first two years following the issuance of the debentures, Centronics' right to redeem was subject to certain conditions involving the market price of Centronics' common stock. To facilitate its right to redeem the debentures, Centronics was required to provide written notice of a proposed redemption to the trustee and to the debenture holders. Section 3.01 of the indenture required that Centronics give the trustee 50-day notice of its intention to call its debentures for redemption, "unless a shorter notice shall be satisfactory to the [t]rustee." Section 3.03 of the indenture required Centronics to provide the debenture holders with "[a]t least 15 days but not more than 60 days" notice of a proposed redemption.
 
 
 5
 At the option of the debenture holders, the debentures were convertible into shares of Centronics' common stock. In the event Centronics called the debentures for redemption, debenture holders could convert their debentures "at any time before the close of business on the last Business Day prior to the redemption date." Subject to certain adjustments, the conversion price was $3.25 per share. The number of shares issuable upon conversion could be determined by dividing the principal amount converted by the conversion price. Upon conversion, however, the debentures provided that "no adjustment for interest or dividends [would] be made."
 
 
 6
 Debenture holders were to receive interest payments from Centronics semi-annually on June 1 and December 1 of each year. Describing the method of interest payment, each debenture provided that
 
 
 7
 [t]he Company will pay interest on the Debentures (except defaulted interest) to the persons who are registered Holders of Debentures at the close of business on the November 15 or May 15 next preceding the interest payment date. Holders must surrender Debentures to a Paying Agent to collect principal payments.
 
 
 8
 To insure the primacy of the debenture holders' right to receive interest, the indenture provided that "[n]otwithstanding any other provision of this Indenture, the right of the Holder of a Security to receive payment of ... interest on the Security ... shall not be impaired."
 
 
 9
 In early 1986, Centronics was considering whether to call its outstanding debentures for redemption. On March 12, 1986, Centronics' Treasury Services Manager, Neil R. Gordon, telephoned Schroder's Senior Vice President in charge of the Corporate Trust Department, George R. Sievers, and informed him of Centronics' interest in redeeming the debentures. Gordon told Sievers that Centronics "was contemplating redemption" of all of its outstanding debentures, subject to SEC approval and fluctuations in the market for Centronics' common stock. Specifically addressing the 50-day notice to the trustee requirement in section 3.01 of the indenture, Gordon asked Sievers how much time "Schroder would need once the SEC had Centronics' registration materials and an actual redemption date could therefore be set." Sievers responded that "Schroder would only need [one] week" notice of the redemption. Sievers explained that this shorter notice would satisfy section 3.01 because Centronics was proposing a complete rather than a partial redemption, and because there were relatively few debenture holders. Sievers explained that the shorter notice therefore would provide it with sufficient time to perform its various administrative tasks in connection with the proposed redemption.
 
 
 10
 Shortly thereafter, on March 20, 1986, Centronics' Board of Directors met and approved a complete redemption of all of its outstanding debentures and designated May 16, 1986 as the redemption date. On April 4, 1986--42 days prior to the redemption--Centronics' President, Robert Stein, wrote Schroder and informed the trustee that "pursuant to the terms of the Indenture, notice is hereby given that the Company will redeem all of its outstanding 10% Convertible Subordinated Debentures due June 1, 1990, on May 16, 1986." Centronics then proceeded to file registration materials with the SEC in order to receive clearance for the redemption. Schroder was furnished with copies of all the materials Centronics had filed with the SEC.
 
 
 11
 On May 1, 1986, the SEC cleared the proposed redemption. On that same day, pursuant to section 3.03 of the indenture, Centronics gave formal notice of the May 16, 1986 redemption to the debenture holders. In a letter accompanying the Notice of Redemption, Centronics' President explained that, as long as the price of Centronics' common stock exceeded $3.75 per share, debenture holders would receive more value in conversion than in redemption. In the Notice of Redemption, debenture holders were advised, inter alia, that the conversion price of $3.25 per share, when divided into each $1,000 principal amount being converted, would yield 307.69 shares of Centronics common stock. Based upon the April 30, 1986 New York Stock Exchange closing price of $5 3/8 per share of Centronics' common stock, each $1,000 principal amount of debenture was convertible into Centronics common stock having an approximate value of $1,653.83. Debenture holders were advised further that failure to elect conversion by May 15, 1986 would result in each $1,000 principal amount debenture being redeemed on May 16 for $1,146.11, which consisted of $1,000 in principal, $100 for the 10% redemption premium, and $46.11 in interest accrued from December 1, 1985 (the last interest payment date) to May 16, 1986 (the redemption date). Finally, the notice of redemption explained that accrued interest was not payable upon conversion:
 
 
 12
 No adjustments for Interest or Dividends upon Conversion. No payment or adjustment will be made by or on behalf of the Company (i) on account of any interest accrued on any Debentures surrendered for conversion or (ii) on account of dividends, if any, on shares of Common Stock issued upon such conversion. Holders converting Debentures will not be entitled to receive the interest thereon from December 1, 1985 to May 16, 1986, the date of redemption. (emphasis in original).
 
 
 13
 On May 15, 1986, the last day available for conversion prior to the May 16, 1986 redemption, Centronics' common stock traded at $6 5/8 per share. At that price, each $1,000 principal amount of debentures was convertible into Centronics' common stock worth approximately $2,038. Thus, it was clear that conversion at $2,038 was economically more profitable than redemption at $1,146.11. Debenture holders apparently recognized this fact because all the debenture holders converted their debentures into Centronics' common stock prior to the May 16, 1986 redemption.
 
 
 14
 Elliott filed the instant action on May 12, 1986 and sought an order from the district court enjoining the May 16, 1986 redemption. Elliott alleged in its complaint that Schroder and Centronics conspired to time the redemption in such a manner so as to avoid Centronics' obligation to pay interest on the next interest payment date, i.e., June 1, 1986. This conspiracy allegedly was accomplished by forcing debenture holders to convert prior to the close of business on May 15, 1986. Elliott contended that, as part of this conspiracy, Schroder improperly waived the 50-day notice in section 3.01 of the indenture and thus allowed Centronics to proceed with the redemption as planned. Elliott claimed that Schroder waived the 50-day notice without considering the impact of that waiver on the financial interests of the debenture holders and that the trustee's action in this regard constituted, inter alia, a breach of the trustee's fiduciary duties. Finally, Elliott alleged that, had it not been for the trustee's improper waiver, debenture holders would have been entitled to an additional payment of $1.2 million in interest from Centronics.
 
 
 15
 After filing the instant action, Elliott filed a motion pursuant to Fed.R.Civ.P. 23 to have itself certified as representative of a class comprised of "all persons who held, as of May 1, 1986, the 10% convertible subordinated debentures due June 1, 1990 of Centronics Data Computer Corp." Schroder and Centronics filed motions to dismiss the action, or, in the alternative, for summary judgment, on the ground that Elliott's complaint failed to state a claim. Centronics and Schroder also filed counterclaims against Elliott and sought an award of costs and attorneys' fees pursuant to an indenture provision, section 315 of the Act, 15 U.S.C. Sec. 77ooo (e), and Fed.R.Civ.P. 11.
 
 
 16
 The district court decided this matter on the basis of the papers filed. The parties stipulated to the facts, as summarized above, and submitted affidavits of experts in the field who provided opinions on the custom and practice in the financial community relevant to the issues in the case. The district court filed its decision on March 17, 1987 in which it denied Elliott's motion for class certification and granted Schroder and Centronics' motions to dismiss. See 655 F.Supp. at 1288-89. The district court also denied Schroder's and Centronics' motions for costs and attorneys' fees. Id. at 1290.
 
 DISCUSSION
 
 17
 The central issue on this appeal is whether the district court properly held that the trustee was not obligated to weigh the financial interests of the debenture holders when it decided on March 12, 1986 to waive Centronics' compliance with section 3.01's 50-day notice requirement. We agree with the district court's conclusion that the trustee was under no such duty. See 655 F.Supp. at 1288-89.
 
 
 18
 At the outset, it is important to sort out those matters not at issue here. First, Elliott does not dispute that Centronics complied in all respects with the indenture's requirement to provide notice of redemption to the debenture holders. Elliott's claim only challenges the sufficiency of the notice to the trustee and the manner in which the trustee decided to waive that notice. Moreover, Elliott does not dispute that Schroder's actions were expressly authorized by section 3.01, which specifically allows the trustee discretion to accept shorter notice of redemption from Centronics if that notice was deemed satisfactory. Finally, except for bald assertions of conflict of interest, Elliott presents no serious claim that Schroder personally benefitted in any way from the waiver, or that, by waiving the notice period, it was taking a position that would harm the interests of the debenture holders and correspondingly inure to the trustee's benefit. Rather, Elliott's claim essentially is that the trustee was under a duty--implied from the indenture, the Act or state law--to secure greater benefits for debenture holders over and above the duties and obligations it undertook in the indenture.
 
 
 19
 No such implied duty can be found from the provisions of the Act or from its legislative history. Indeed, section 315(a)(1) of the Act allows a provision to be included in indentures (which was incorporated into the indenture at issue here) providing that
 
 
 20
 the indenture trustee shall not be liable except for the performance of such duties [prior to an event of default] as are specifically set out in [the] indenture.
 
 
 21
 See 15 U.S.C. Sec. 77ooo (a)(1). Moreover, when the Act was originally introduced in the Senate by Senator Barkley, it provided for the mandatory inclusion of a provision requiring the trustee to perform its pre-default duties and obligations in a manner consistent with that which a "prudent man would assume and perform." See S. 2065, 76th Cong., 1st Sess. Sec. 315(a) (1939) (the "Barkley Bill"); S.Rep. No. 248, 76th Cong., 1st Sess. 25 (1939). However, the version of the Act introduced in the House of Representatives by Representative Cole excluded the imposition of a pre-default "prudent man" duty on the trustee. See H.R. 5220, 76th Cong., 1st Sess. Sec. 315 (1939). After extensive hearings on the House and Senate versions of the Act, during which representatives of several financial institutions expressed concern over the imposition of pre-default duties in excess of those duties set forth expressly in the indenture, see Hearings on H.R. 2191 and 5220 Before the Subcomm. of the House on Interstate and Foreign Commerce, 76th Cong., 1st Sess. (1939), Congress enacted the present version of section 315 of the Act. Thus, it is clear from the express terms of the Act and its legislative history that no implicit duties, such as those suggested by Elliott, are imposed on the trustee to limit its pre-default conduct.
 
 
 22
 It is equally well-established under state common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture, see, e.g., Green v. Title Guarantee & Trust Co., 223 A.D. 12, 227 N.Y.S. 252 (1st Dep't), aff'd, 248 N.Y. 627, 162 N.E. 552 (1928); Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541 (Sup.Ct.N.Y.County 1936), aff'd, 257 A.D. 950, 14 N.Y.S.2d 147 (1st Dep't), aff'd, 282 N.Y. 652, 26 N.E.2d 801, cert. denied, 311 U.S. 708, 61 S.Ct. 319, 85 L.Ed. 460 (1940), although the trustee must nevertheless refrain from engaging in conflicts of interest. See United States Trust Co. v. First National City Bank, 57 A.D. 285, 394 N.Y.S.2d 653 (1st Dep't 1977), aff'd, 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E.2d 1355 (1978).
 
 
 23
 In view of the foregoing, it is no surprise that we have consistently rejected the imposition of additional duties on the trustee in light of the special relationship that the trustee already has with both the issuer and the debenture holders under the indenture. See Meckel v. Continental Resources Co., 758 F.2d 811, 816 (2d Cir.1985); In Re W.T. Grant Co., 699 F.2d 599, 612 (2d Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1083 (2d Cir.1977). As we recognized in Meckel,
 
 
 24
 [a]n indenture trustee is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.
 
 
 25
 758 F.2d at 816 (citing Hazzard v. Chase National Bank, supra ) (emphasis added). We therefore conclude that, so long as the trustee fulfills its obligations under the express terms of the indenture, it owes the debenture holders no additional, implicit pre-default duties or obligations except to avoid conflicts of interest.
 
 
 26
 Our analysis here is therefore limited to determining whether the trustee fulfilled its duties under the indenture. As set forth above, section 3.01 requires that, when the company intends to call its debentures for redemption, it must provide the trustee with 50-day notice of the redemption, "unless a shorter notice shall be satisfactory to the [t]rustee." Section 3.02 of the indenture sets forth the manner in which the trustee selects which debentures are to be redeemed when the company calls for a partial redemption. The American Bar Foundation's Commentaries on Model Debenture Indenture Provisions (1971) (the "Commentaries") explains that "[n]otice of the Company's election to redeem all the debentures need not be given to the Trustee since such a redemption may be effected by the Company without any action on the part of the Trustee...." Id. at Sec. 11-3, p. 493. Thus, it appears that section 3.01's notice requirement is intended for the trustee's benefit to allow it sufficient time to perform the various administrative tasks in preparation for redemption. While compliance with a full notice period may be necessary in the event of partial redemption, the full notice may not be required in the event of a complete redemption. We find that, although the trustee may reasonably insist on the full 50-day notice in the event of a complete redemption, it nevertheless has the discretion to accept shorter notice when it deems such shorter notice satisfactory.
 
 
 27
 In his affidavit filed on behalf of Schroder's motion to dismiss, Sievers explained the reasoning behind his decision on behalf of Schroder to waive the notice:
 
 
 28
 On March 12, 1986, I received a phone call from Neil R. Gordon of Centronics Computer Corp. (the "Company") regarding the possibility of the Company effecting a redemption of all of its 10% Convertible Subordinated Debentures Due June 2, 1990 (the "Debentures"). Mr. Gordon specifically inquired about the Trustee's needs under the 50 day notice requirement specified in Section 3.01 of the Indenture dated as of June 1, 1985 (the "Indenture") between Schroder and the Company pursuant to which the Debentures were issued. I told Mr. Gordon that Schroder would need only a week to prepare the notices for a redemption since there were less than two dozen holders to be notified.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 I know [from] personal knowledge ... that the notice periods are meant to coordinate with the Trustee's own obligation to give notice to debentureholders in a partial redemption. The Trustee must be informed of a partial optional redemption sufficiently in advance of the time for giving such notice to permit it to make the selection of debentures to be redeemed.... If less time is required than the full number of days allowed by the particular indenture, then the trustee can and should waive the unnecessary and unneeded days. This pragmatic consideration is the reason that virtually all indentures modeled after the ABA instrument explicitly provide "unless a shorter notice shall be satisfactory to the Trustee."
 
 
 32
 In view of the fact that only 23 debentureholders held all of the Company's Debentures, the determination to proceed with a redemption of all the Debentures with a notice of less than 50 days would have been within Schroder's discretion and waiver of the 50 day period would have been consistent with the intent of Section 3.01 of the Indenture.
 
 
 33
 I know it to be the case that other corporate trustees under comparable indentures have been asked to waive equivalent notice provisions, i.e., finding that a shorter period of time is satisfactory to the trustee to effect the selection required for a partial redemption. Waiver is most frequently employed where there is a small number of debentureholders relative to the principal amount outstanding. Schroder and other trustees regularly waive the full time of notice on numerous occasions when less time is needed to carry out the functions for which the time period was created.
 
 
 34
 When Schroder received Centronics' May 1, 1986, formal letter, it had more than sufficient time to give the required notice to the 23 debentureholders. Accordingly, Schroder did not object because, in the language of the indenture and according to uniform custom, the "shorter notice shall be (and was indeed) satisfactory to the Trustee."
 
 
 35
 From Siever's affidavit, it is clear that Schroder complied with the letter and spirit of the indenture when it waived compliance with the full 50-day notice. Schroder was given the discretion to waive full notice under appropriate circumstances, and we find that it reasonably exercised that discretion.
 
 
 36
 To support its argument that Schroder was obligated to consider the impact of the waiver on the interests of the debenture holders, Elliott relies on our decision in Dabney v. Chase National Bank, 196 F.2d 668 (2d Cir.1952), as suppl'd, 201 F.2d 635 (2d Cir.), cert. dismissed per stipulation, 346 U.S. 863, 74 S.Ct. 102, 98 L.Ed. 374 (1953). Dabney provided that
 
 
 37
 the duty of a trustee, not to profit at the possible expense of his beneficiary, is the most fundamental of the duties which he accepts when he becomes a trustee. It is a part of his obligation to give his beneficiary his undivided loyalty, free from any conflicting personal interest; an obligation that has been nowhere more jealously and rigidly enforced than in New York where these indentures were executed. "The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty * * * In some relations the fiduciary element is more intense than in others; it is peculiarly intense in the case of a trust." We should be even disposed to say that without this duty there could be no trust at all.
 
 
 38
 196 F.2d at 670 (footnotes omitted) (citations omitted); see United States Trust Co. v. First National City Bank, 57 A.D.2d 285, 394 N.Y.S.2d 653, 660-61 (1st Dept.1977), aff'd, 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E.2d 1355 (1978) (adopting Dabney ). Dabney arose, however, in an entirely different factual context than the instant case.
 
 
 39
 The Dabney court examined the conduct of a trustee who knew or should have known that the company for whose bonds it served as trustee was insolvent. While possessing knowledge of the company's insolvency, the trustee proceeded to collect loan obligations from the company. The court held that the trustee's conduct in this regard constituted a breach of its obligation not to take an action which might disadvantage the debenture holders while providing itself with a financial advantage, i.e., the trustee engaged in a conflict of interest. See 196 F.2d at 673. Thus, while Dabney stands for the proposition that a trustee must refrain from engaging in conflicts of interest, it simply does not support the broader proposition that an implied fiduciary duty is imposed on a trustee to advance the financial interests of the debenture holders during the period prior to default. Because no evidence was offered in the instant case to suggest that Schroder benefitted, directly or indirectly, from its decision to waive the 50-day notice, and thus did not engage in a conflict of interest, it is clear that Dabney is inapposite to the instant appeal.
 
 
 40
 Schroder also contends that, even if we were to find that the trustee owed the debenture holders a duty to consider the impact of the waiver, we would nevertheless be compelled to dismiss this action because the debenture holders were not entitled to payment of accrued interest upon conversion. However, since we agree with the district court that the trustee had no duty to consider the impact of the waiver, we do not decide this question.
 
 CONCLUSION
 
 41
 In view of the foregoing, we affirm the judgment of the district court which dismissed Elliott's action. In light of this disposition, it is unnecessary for us to pass on the merits of the district court's decision denying Elliott's motion for class certification. Moreover, we have considered Schroder's and Centronics' cross-appeals from the district court's decision dismissing their counterclaims for costs and attorneys' fees. Nowhere have cross-appellants demonstrated that the district court abused its discretion when it dismissed their claims for sanctions, and we therefore affirm the district court's decision in that regard.
 
 
 42
 Affirmed.