

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2004

# Ketzner v. John Hancock

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4870

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ketzner v. John Hancock" (2004). *2004 Decisions.* Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4870

_____

HELEN KETZNER, M.D.,
Appellant

v.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY;
PROVIDENT LIFE INSURANCE COMPANY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 99-cv-04852)
District Judge:  Honorable John W. Bissell, Chief Judge

_____

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2004

Before:  RENDELL and FISHER, Circuit Judges,
and YOHN*, District Judge.

(Filed: December 17, 2004)

_____

OPINION OF THE COURT

_____

_____

*Honorable William H. Yohn, Jr., Senior District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

RENDELL, Circuit Judge.

Appellant Doctor Helen Ketzner brought this suit against Appellees John Hancock Mutual Life Insurance Company ("Hancock") and Provident Life Insurance Company ("Provident") asserting a panoply of claims arising from the processing of Appellant's claims on a disability insurance policy she had purchased from Hancock. After several years of motions and discovery disputes, the District Court granted Appellees' motion for summary judgment on all counts. On appeal, Appellant argues that the District Court erred in dismissing her claims for bad faith, declaratory judgment, and breach of contract, and in denying her leave to amend her complaint to add causes of action for post-complaint bad faith, malicious abuse of process, and RICO violations.

The District Court had jurisdiction over this diversity of citizenship action under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. Because we believe the District Court provided more than adequate reasoning to justify sound conclusions, we will affirm its judgment.

I.

In the fall of 1997, Ketzner was working as an internist for HIP Health Plan of New Jersey, a health maintenance organization. Although she had been experiencing problems since she began working at HIP, by November 1997 she had become overwhelmed. She was feeling tense in dealing with patients and had been threatened by some of them. Her concentration was poor, she was losing weight, and she "derived little

2

enjoyment from anything." In mid-November 1997, Ketzner stopped working.

Ketzner alleged that she left her job at HIP because of a medical disability, dysthymic depression, and the essence of her initial claim in this litigation was that she had not received the full benefits entitled to her for this disability under a disability income insurance policy she had purchased from Hancock that was administered by Provident.[1]

Problems with Ketzner's claim on the policy developed from the very beginning: she alleged that she gave Appellees notice of her disability claim as early as December 1997, but Appellees contended that they first received notice regarding the claim on January 12, 1998. This miscommunication was, unfortunately, the first in a series of miscommunications and disputes that spanned several months of increasingly tense dealings between Ketzner and Appellees. We note that these incidents are well documented by the parties and the District Court in the record; consequently, we will make only sparing and necessary reference to them here.

By March 27, 1998, Appellees had received from Ketzner a completed "Statement

---

[1]Ketzner purchased her first disability income insurance policy from Hancock in 1980. The noncancellable policy was to provide "disability income protection if [Ketzner] were injured or ill and not able to perform the material duties of her occupation." On July 22, 1991, Hancock reissued the policy in light of a premium reduction. Pursuant to an agreement entered into on July 30, 1992, Provident assumed responsibility for adjudicating claims under the policy. Under this agreement, Provident was "'solely responsible for performing all claim administration, as well as funding the payment of benefits, and John Hancock did not participate in the adjudication or payment of benefits under the policy of disability income insurance.'"

of Claim" form, required to process her claim. Accompanying this form was an "Attending Physicians Statement," signed by Ketzner's therapist, Marsha K. Ontell, on March 6, 1998, and by one of Ketzner's physicians, Dr. Campion, on March 17, 1998. This form, also required to process Ketzner's claim, was to be completed by an attending doctor for the purpose of giving an opinion regarding Ketzner's "degree of disability," but it appeared to have been completed by Ontell, the primary signatory, or Ketzner herself rather than by Dr. Campion. In this form, Ketzner was diagnosed with "dysthymic depression r/o major depression,"[2] with symptoms first appearing on November 13, 1997, and treatment for this "total disability," provided by Ontell, beginning the next day. (App. at 53a.) The form also stated that Ketzner had previously suffered from depressive episodes and had been treated for her symptoms by Ontell with therapy sessions twice a week since November 1997.

The majority of the parties' miscommunications and tense encounters occurred during the period of April to October 1998. During this time, as they were investigating Ketzner's claim, Appellees sent a variety of supplementary forms to Ketzner and her

---

[2]The District Court explained this diagnosis in a footnote:
> Dysthymia is a disorder similar to clinical depression but with milder symptoms and is longer-lasting. It is considered less disabling than major depression. Although the disorder lasts for at least two years, those affected are usually able to go on working and do not need hospitalization. Also "r/o" is a widely accepted medical abbreviation for "rule out." Therefore it appears that Dr. Ketzner was diagnosed as having dysthymia, and major depression was ruled out.

4

health care providers and specifically requested Ontell's notes regarding her treatment and evaluation of Ketzner. Ketzner, taxed by what she describes as "endless questions and forms" and "continuing harassment," was at times too overwhelmed to deal productively with Appellees, and eventually she retained an attorney to represent her in dealing with Appellees. In response to Appellees' request for treatment notes, Ontell had submitted a detailed medical history on her therapy sessions with Ketzner, but did not submit a copy of her treatment and evaluation notes. Ontell also asked that Appellees not contact Ketzner directly as such contact tended to upset Ketzner. At one point, Ketzner offered to see a psychiatrist to expedite the processing of her claim. Appellees instead requested that Ketzner meet with one of their field representatives for an interview to aid in their information gathering.

After several failed attempts to arrange the interview, on October 13, 1998, Ketzner finally met with a field representative to discuss her claim. At the interview, Ketzner complained of its harassing nature and debated with the representative over whether Ketzner could audiotape the discussion; eventually Ketzner did record the conversation. Regarding her treatment, Ketzner stated that she did not require medication, a statement that contradicted Dr. Campion's diagnosis, but admitted receiving prescription medication, including Paxil, Prozac, and Zoloft, from a psychiatrist she would not identify. After the interview, the representative concluded that numerous questions remained unanswered regarding whether a disability existed, the severity of any

5

disability, and a diagnosis. The representative also noted that Ketzner was generally uncooperative and did not forward a copy of the tape she had made despite the representative's requests.

Two days after the interview, Appellees referred Ketzner's disability file for a second medical review. A review was conducted shortly thereafter and concluded that based on the contradictions, ambiguities, and unsubstantiated diagnoses in the materials submitted by Ketzner and her treatment providers, a "diagnosis of major depression was 'clearly not substantiated.'" The review also stated that an independent medical examination may be necessary.

Toward the end of October 1998, Ketzner's attorney sent a letter to Appellees outlining the perceived mishandling of Ketzner's claim and demanded payment within 30 days under threat of suit. Appellees responded that they had still not received Ontell's treatment notes or a copy of the audiotape of the interview with the field representative, claiming both were necessary to complete the processing of Ketzner's claim. The letter also stated that a thorough review of the materials submitted indicated that Ketzner's disability claim was unsubstantiated and, unless the requested information were submitted within 30 days, the claim would be denied and the case would be closed.

Shortly after this correspondence, Appellees received a psychiatric summary from a Dr. Williams, which further clouded the medical information regarding Ketzner's condition, stating that Ketzner "'displayed no cognitive impairment. Insight and

6

judgment were adequate,'" but that Ketzner suffered from major depression and required antidepressant medication.

In November 1998, Ketzner's counsel again wrote to Appellees to explain: why he thought they were acting in bad faith, that Ontell's notes did not exist, and that the request for the audiotape was puzzling since the interview was taped by Ketzner and the field representative did not see the need to tape it. Appellees responded that they believed the notes existed because Ontell had earlier represented that she would not release them. At this time, Appellees determined that a complete independent medical examination of Ketzner was necessary to complete their evaluation of her claim, and as a showing of good faith, Appellees paid Ketzner three months of benefits.

By the end of December, Ketzner had appointments to be examined by Drs. Nancy and David Gallina for the independent medical examination. The reports of these examinations were filed in mid-January 1999, and, based on these reports, Appellees denied Ketzner's claim for disability benefits in mid-March 1999. This litigation began after the denial of the claim.

During the litigation, Ketzner filed another claim for disability benefits on or about January 13, 2002 for "'various orthopedic and neurological afflictions concerning her right hand.'" (Ketzner v. John Hancock Mut. Life. Ins. Co., No. 99-4852(JWB) (D.N.J. Dec. 11, 2003).) She alleged that this disability began on the same date her purported psychiatric disability began–November 14, 1997. Despite the late notice of the claim,

7

Appellees found Ketzner's condition satisfied the definition of "total disability" and they paid her retroactive benefits, with interest. Although there was some confusion regarding how Appellees paid the benefits, at this point it is undisputed that Ketzner was paid for all months from January 13, 1998 through present. The only payment Ketzner continues to contest is for the period before the chosen "begin date," i.e., from November 14, 1997 through January 13, 1998.

## II.

The procedural history of this litigation is extensive. Looking only at a sampling of the relevant end work-product of the District Court's labors, we note that Chief Judge Bissell filed no fewer than four orders in this matter, three of which were accompanied by thoroughly reasoned opinions, and Magistrate Judge Haneke has filed no fewer than three orders and one letter opinion. A thorough review of all the orders and opinions here would be unproductive. Instead, we will discuss each order and opinion that is specifically relevant to Ketzner's appeal as our review requires such.

## III.

We exercise plenary review over the District Court's grant of summary judgment. Abramson v. William Paterson College, 260 F.3d 265, 276 (3d Cir. 2001). To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P.

8

56(c). We review the District Court's denial of leave to amend a complaint for abuse of discretion. Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993).

IV.

A.    Bad Faith Claim

The District Court considered Ketzner's bad faith claim against Appellees in an opinion filed on March 5, 2003, ultimately granting summary judgment to Appellees. The Court reconsidered the grant of summary judgment in its November 25, 2003 opinion and again found Ketzner's bad faith claim to be without merit, ultimately denying her motion for reconsideration. Both times the Court found that because Ketzner could not establish a right to summary judgment with respect to her claim for disability benefits, her disability claim was "fairly debatable" and, therefore, she had no sustainable bad faith claim against Appellees. We agree with the District Court's analysis and conclusion on this issue.

Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a "fairly debatable" reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. Pickett v. Lloyds, 621 A.2d 445, 454 (N.J. 1993). To establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails. Id. In other words, if there are material

issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith. Id.; Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 400-01 (D.N.J. 2000); Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 335 (D.N.J. 1996).

As the District Court noted, there were several competing medical reports about Ketzner's mental state and, even before the examinations by Drs. Gallina, there were many material issues of disputed fact. In short, we agree with the District Court that given the variety of inconsistencies within and among the medical reports, the time delays in processing Ketzner's claims because of miscommunications, and Ketzner's failure to produce requested documents in a timely manner, "a reasonable juror could find that defendants reasonably denied Dr. Ketzner's claim for benefits." Plainly put, there is enough evidence on the record, even without further discovery or consideration of the examinations conducted by Drs. Gallina, to conclude that Ketzner's disability claim was fairly debatable. Ketzner's arguments that Drs. Gallina were not truly independent examiners, that their opinions lacked credibility, that they should not have been allowed to be characterized as expert witnesses for Appellees, and that Appellees violated state insurance laws and regulations with respect to keeping claims files do nothing to alter or refute this dispositive circumstance. Regarding the balance of Ketzner's arguments on this issue, regardless of whether they were all raised to the District Court as Appellees contest, to the extent they are based on denial of jury consideration, misapplication of

10

Pickett, the law of other jurisdictions regarding bad faith claims, alternative approaches to bad faith claims under New Jersey law, constitutional rights to jury trials under both the United States and New Jersey constitutions, and insurance ethics, they are all similarly misplaced. None of these contentions persuasively refutes the evidence of record, adequately considered by the District Court on more than one occasion, or its conclusion that Ketzner's claim was fairly debatable before Drs. Gallina were ever involved. As a matter of law, under the controlling precedent of Pickett, Ketzner's bad faith cause of action is unsustainable and Appellees are entitled to summary judgment thereon.

B.     Malicious Abuse of Process and Post-Complaint Bad Faith Claims

Ketzner argues that the District Court erred in denying her requests to amend her complaint to add claims for malicious abuse of process and post-complaint bad faith. These claims are based on allegations that Appellees "sought irrelevant, invasive, and abusive discovery" and "blocked discovery of the witnesses who provided the sole factual predicate for [Appellees'] claims denial–Drs. Gallina–by designating them as trial expert witnesses after Dr. Ketzner subpoenaed their records and depositions." We believe that the District Court and the Magistrate Judge gave more than adequate consideration to these claims and we find that the District Court did not abuse its discretion in denying leave to amend the complaint to add them.

Magistrate Judge Haneke first entertained Ketzner's motion to amend to add these claims in a hearing on May 13, 2002. During the hearing, Magistrate Judge Haneke

11

characterized the motion as an effort to disguise earlier allegations of wrongful defense that had been rejected and not appealed to the District Court, and he accused Ketzner's counsel of trying "to make a simple thing complex." Accordingly, he denied the motion on the grounds of bad faith and futility. After this decision, the District Court passed, twice, on renewed attempts by Ketzner to assert these claims or their substantial equivalents. In an opinion and order filed on March 6, 2003, the District Court denied Ketzner's appeal of Magistrate Judge Haneke's May 13, 2002 order. Specifically discussing the malicious abuse of process and post-complaint bad faith claims, the District Court found that they were merely relabeled claims for the wrongful defense claim that Magistrate Judge Haneke had already decided could not be added to the complaint in an April 24, 2000 order that had not been appealed. Discussing Ketzner's proposed amendments more generally, the Court noted that many of the claims were based on complaints concerning discovery practices by Appellees that Magistrate Judge Haneke had authorized in rulings that were not timely appealed. The District Court revisited and affirmed its reasoning for denying leave to amend to add the post-complaint bad faith claim in its December 11, 2003 opinion.

As noted above, we review a denial of a motion for leave to amend a complaint for abuse of discretion. Lorenz, 1 F.3d at 1413. "Amendments, although liberally granted, rest within the sound discretion of the trial court." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). On review of the record, we are satisfied that the District

12

Court, and indeed the Magistrate Judge, were well within their discretion in denying Ketzner's motion to amend the complaint to add these claims. Furthermore, we agree with this conclusion insofar as these claims are, for all practical purposes, a repackaging of the wrongful defense claim that was previously denied by the Magistrate Judge and never directly appealed.

C.    RICO Claim

Ketzner argues that the District Court erred in denying her motion to amend her complaint to assert a RICO claim. The District Court's error, she maintains, derives from the Magistrate Judge's error in originally denying the motion in reliance on a prior decision in a completely inapplicable case involving an ERISA claim.

In an order filed on April 22, 2003, Magistrate Judge Haneke denied for futility Ketzner's motion to amend the complaint to add a RICO claim. He explained that the amendment would be futile because it could not withstand a motion to dismiss and incorporated by reference his prior letter opinion in Mark v. Unum Provident Corp., Civ. Action No. 00-3872 (JAG), believing its reasoning to be applicable to his denial of Ketzner's motion. (Id.) The District Court denied Ketzner's appeal of this decision in an order filed on December 16, 2003.

In the Mark letter opinion, the Magistrate Judge denied the plaintiff's motion for leave to amend to add ERISA and RICO claims in a case where plaintiff was suing Provident on a group long-term disability policy for unpaid benefits, a scenario very

13

similar to the instant case. In denying leave to add the RICO claim, the Magistrate Judge stated that he believed its proposed addition was a transparent effort to circumvent the strictures of ERISA, which was designed to limit the available remedies for plaintiffs in that type of dispute, and that the defendant had met the burden of demonstrating the futility of the proposed amendment. Ketzner argues the Magistrate Judge's reliance on Mark was misplaced because Ketzner's case has nothing to do with ERISA and she did not delay in asserting the RICO claim.

Again, we review the District Court's denial of the motion for leave to amend under abuse of discretion. Lorenz, 1 F.3d at 1413. We understand Ketzner's argument that Mark involved an ERISA claim and her case plainly does not, and we agree that, to the extent the Magistrate Judge denied the RICO claim in Mark as an attempt to avoid the strictures of ERISA, that much of Mark is inapplicable. Nevertheless, we believe that the Magistrate Judge did explain his decision to deny leave to amend in both cases was based on the futility of the proposed amendments. While Mark may not be directly applicable, there, as here, the situation is ill-suited to a RICO claim. In both cases, the plaintiffs attempted to turn relatively weak bad faith claims regarding the processing of their own insurance claims (that were eventually paid) into a wholesale indictment of the way Provident processes all policy claims, grounded only in assertions that further discovery would justify their vague allegations of some illegal scheme. Both the Magistrate Judge and the District Court were correct in refusing to endorse a fishing expedition to justify a

14

RICO claim where the initial bad faith claim had already proven meritless. Because we would also disapprove of Ketzner's piscatory endeavors, we conclude that the District Court did not abuse its discretion denying her appeal of the Magistrate Judge's denial of her motion to amend the complaint to add a RICO claim.

D.   Declaratory Relief and Breach of Contract Claims

Ketzner's final argument on appeal is that the District Court erred in granting summary judgment to Appellees on her breach of contract and declaratory judgment claims on the grounds they were moot. Ketzner contends that although she has been paid benefits for her orthopedic disability claim from January 13, 1998 onward, she has not been compensated for the period of November 14, 1997, when she made her first claim of mental disability, to January 13, 1998.

We are persuaded that the District Court's resolution of this issue in its December 11, 2003 opinion, by applying a 2½-month overpayment to the disputed 2-month period of November 14, 1997 to January 13, 1998, was correct. Although Ketzner has continually asserted that she has not been paid for this period and that the District Court erred, she has not specifically contested the District Court's discussion of the 2½-month overpayment or explained to us why this was wrong. Furthermore, we find nothing in the record that indicates that the District Court made an error in this determination. Accordingly, we find no genuine issue of material fact regarding the District Court's conclusion and, therefore, we affirm the District Court on this point.

15

## V.

For the reasons stated above, we will AFFIRM the District Court's judgment on all counts.