

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2003

# Hemphill v. Meyerson

Precedential or Non-Precedential: Non-Precedential

Docket 02-2449

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Hemphill v. Meyerson" (2003). *2003 Decisions.* Paper 664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2449

KIM HEMPHILL, both individually
and as Trustee of the CHAPMAN
IRREVOCABLE TRUST; DARIN CHAPMAN

v.

MARTIN MEYERSON; JEFFREY E. MEYERSON;
GREGG A. DUDZINSKI; EMEYERSON.COM INC.;
M.H. MEYERSON & CO., INC.

Kim Hemphill and Darin Chapman,

Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

(Dist. Court No. 01-cv-05134)
District Court Judge: Honorable Katharine S. Hayden

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2003

Before: ALITO and MCKEE, <u>Circuit Judges</u>, and SCHWARZER,[*] <u>District Judge</u>.

(Opinion Filed: April 4, 2003)

---

[*] The Honorable William W Schwarzer, Senior District Judge for the Northern
District of California, sitting by designation.

OPINION OF THE COURT

PER CURIAM:

This securities-fraud action was dismissed by the District Court on a motion under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The primary basis for this decision was the failure to plead a material misstatement or omission. The District Court also denied leave to amend the complaint. We affirm.

I.

M. H. Meyerson, a securities brokerage firm, established its subsidiary eMeyerson in 1999 to develop and offer Internet brokerage services. Defendant Gregg A. Dudzinski sat on the board of directors of eMeyerson and solicited plaintiff Darin Chapman to invest in the venture. Dudzinski showed Chapman a demo of the eMeyerson web site based on a platform created by TradinGear.com, Inc. Dudzinski told Chapman that TradinGear's software was "far better than any other available product" and that "eMeyerson had an exclusive licensing agreement with TradinGear for its software." Dudzinski also told Chapman that eMeyerson owned 5% of TradinGear's stock and was "currently engaged in negotiations to acquire a controlling ownership of TradinGear and was on the verge of signing an agreement to that effect." Dudzinski also asked Chapman to encourage Chapman's father-in-law, plaintiff Kim Hemphill, to invest. In April, 2000, each plaintiff invested $60,000, and Hemphill invested an additional $180,000 on behalf of a trust he administered for the Chapman family.

Following the stock purchase, M. H. Meyerson filed a 10-K form with the SEC that stated that eMeyerson had acquired approximately 50% of TradinGear's outstanding shares. Directors of M. H. Meyerson reaffirmed this representation to Chapman and Hemphill in May 2000. Appellants contend that this representation was false, that eMeyerson never owned more than 5% of TradinGear, and that it had not sought to purchase a controlling interest in TradinGear. Appellants claim that eMeyerson instead "had hired away one of TradinGear's senior officers [James O'Connell] for the purpose of stealing TradinGear's proprietary software and selling it to third parties as its own."

II.

Hemphill and Chapman brought this action under section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and the Securities and Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5, which enforces that provision. The SEC regulation provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a violation of Rule 10b-5, a plaintiff must allege "(1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness and (5) that the plaintiff reasonably relied

-3-

on the misrepresentation or omission and (6) consequently suffered damage." In re

Westinghouse Sec. Litig., 90 F.3d 696, 710 (3d Cir. 1996). Moreover, both the Federal

Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. §

78u-4, impose requirements of heightened specificity in the pleadings. The former

provides: "In all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions

of mind of a person may be averred generally." FED. R. CIV. P. 9(b). "Rule 9(b) requires a

plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the

person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was

made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to

his damage." Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992). The PSLRA

supplements and refines this standard by requiring 10b-5 plaintiffs to

> specify each statement alleged to have been misleading, the reason or
> reasons why the statement is misleading, and, if an allegation regarding the
> statement or omission is made on information and belief, the complaint shall
> state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

The District Court cited three paragraphs of the plaintiffs' complaint that were

emphasized as purporting to allege material misstatements by the defendants. They state:

> According to Dudzinski, eMeyerson had an exclusive licensing agreement
> with TradinGear for its software[,] and this, explained Dudzinski, was a
> critical element to eMeyerson's future growth and success. [Para. 17]

* * *

-4-

> Dudzinski explained that (a) M. H. Meyerson would now be able to offer an Internet based electronic trading system to its individual customers and (b) eMeyerson, in addition to servicing these individual investors, would also be able to market and license the electronic trading platform to other financial institutions for a lucrative fee. [Para. 18]

> \* \* \*

> Dudzinski admitted to Hemphill that rather than purchasing a controlling interest in TradinGear's stock, eMeyerson had hired away one of TradinGear's senior officers for the purpose of stealing TradinGear's proprietary software and selling it to third parties as its own. [Para. 33]

Based on the licensing agreement between eMeyerson and TradinGear, the District Court found that the statements attributed to Dudzinski in paragraphs 17 and 18 contained "no misstatement." Accordingly, the District Court dismissed the action for failure to state a claim and noted additionally that the complaint did not allege scienter or loss causation in a manner consistent with Rule 9(b) or the PSLRA. The Court dismissed additional claims as derivative of the 10b-5 claim or outside its discretionary exercise of pendent jurisdiction. Finally, the Court refused to permit the plaintiffs to file an amended complaint, reasoning that "with the benefit of oral argument the plaintiffs have not demonstrated even in the interstitial way that sometimes oral argument permits that a repleading or an amended pleading of this lawsuit is going to resolve things any more favorably for them."

III.

This Court gives plenary review to the District Court's Rule 12(b)(6) dismissal. See Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000).

Appellants open their argument by citing conclusory statements in their complaint

and asserting that these suffice to overcome a motion for dismissal under Rule 12(b)(6). We have considered the passages on which the appellants rely, and we agree with the District Court that they are deficient.  See Port Auth. v. Arcadian Corp., 189 F.3d 305, 311–12 (3d Cir. 1999).

Appellants proceed to urge reversal of the District Court's holding that Dudzinski accurately represented that eMeyerson had acquired an exclusive license to TradinGear's software.  However, the appellants do not explain why the District Court's reading of straightforward language in the eMeyerson/TradinGear agreement is erroneous.  The contract states: "TG [TradinGear] hereby grants to eMHMY [eMeyerson] an exclusive license during the Term and within the Territory to market and sell the Co-Branded Product to End Users and Commercial Clients pursuant to this Agreement."  The contract defines "Territory" as "throughout the World" and provides for automatic renewal so long as the parties do not commit a material breach.  One provision reserves to TradinGear "the right to license or market the Product to or through any other person or entity," but given that "any other person or entity" may include neither "End Users" nor "Commercial Clients," it is difficult to see how this clause alters the nature of the license granted to eMeyerson.

Next, Appellants argue that the District Court's ruling on the immateriality of Dudzinski's statement that eMeyerson intended to acquire TradinGear was erroneous.  The District Court considered immaterial the representations Dudzinski made regarding efforts to acquire TradinGear because "the control of TradinGear is not pleaded as the sine qua non of access to the product" that Dudzinski "described as important" to eMeyerson's business

-6-

plan. The legal test for materiality is "whether there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having significantly altered the total mix of information available to that investor." Westinghouse, 90 F.3d at 714 (citation and internal quotation marks omitted). The District Court's determination that the means by which eMeyerson intended to achieve exclusive rights to TradinGear's software had little significance comports with this standard.

Finally, Appellants allege that when Dudzinski represented that eMeyerson was participating in negotiations to acquire a controlling interest in TradinGear, "the defendants were in fact actually engaged in a fraudulent scheme to steal proprietary software created by TradinGear . . . by hiring away one of the key employees of TradinGear." The District Court noted that events that soured the relationship between eMeyerson and TradinGear occurred in 2001, well after Appellants' investment. This reasoning was proper because the complaint failed to allege that Dudzinski's statements misrepresented the truth at the time he made them. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1316, 1330 (3d Cir. 2002) ("[A] statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.").

IV.

The decision whether to grant plaintiffs leave to amend a complaint is within the discretion of the District Court and may be reversed only for abuse of discretion. See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and

futility." Burlington Coat Factory, 114 F.3d 1410, 1434 (3d Cir. 1997). The District Court, in reasoning that "a repleading or an amended pleading of this lawsuit is [not] going to resolve things any more favorably for [the plaintiffs]," rested its decision on grounds of futility. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" evaluated according to "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id.

Because the dismissal of Appellants' claims may be justified solely on the basis of Rule 12(b)(6), there is no cause for this Court to reverse the denial of leave to amend. To avoid "preclud[ing] the prosecution of a possibly meritorious claim because of defects in the pleadings," Ross v. A.H. Robins Co., 607 F.2d 545, 547 (2d Cir. 1979), "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend," Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986) (citing MOORE'S FEDERAL PRACTICE ¶ 9.03 at 9–34 (2d ed. 1986)); see also Burlington Coat Factory, 114 F.3d at 1435. This policy does not extend to claims dismissed under Rule 12(b)(6) because a complaint that does not state a claim as a matter of law "cannot survive a Rule 12(b)(6) motion even if made with more particularity." Luce, 802 F.2d at 57.

V.

We affirm the order of the District Court dismissing the action for failure to state a claim and find Rule 12(b)(6) a satisfactory independent basis for the dismissal. Accordingly, we also affirm the District Court's denial of leave to replead.