**Fitz GREEN, Appellant,**

v.

**CITY OF PHILADELPHIA, P/O John Doe I & P/O John Doe II; Evelyn White; Officer Williams; Officer Whitaker.**

No. 03–2368.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 12, 2004.

Decided March 10, 2004.

---

Robert Land, Philadelphia, PA, for Appellant.

Jane L. Istvan, Craig R. Gottlieb, City of Philadelphia Law Department, Philadelphia, PA, for Appellees.

Before SCIRICA, Chief Judge, ROTH and McKEE, Circuit Judges.

## OPINION

McKEE, Circuit Judge.

Fitz Green argues that the district court erred when it granted the motion of defendants City of Philadelphia, Officer Williams and Officer Whitaker to dismiss the claims Green brought under 42 U.S.C. § 1983. For the reasons that follow, we will affirm.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. It is sufficient to note that Green was shot by Evelyn White on July 4, 2000, about a month after Philadelphia Police Officers Williams and Whitaker investigated a "domestic dispute" involving Green and White. During this investigation, Green told them that White had threatened him with a gun and had violent tendencies. The officers took White's gun, but later returned the gun to her although Green alleged that it was neither licensed nor registered.

Green subsequently filed a claim against White, the City of Philadelphia and the police officers. At issue here are his claims against the last three defendants ("City defendants") under 42 U.S.C. § 1983 for violating his Fourteenth Amendment substantive due process

rights. He alleges that White harmed him due to state-created danger and municipal policy.

## II.

As noted, Green appeals two claims. Each is considered separately.[1]

### A. State-created danger

Green argues that the police officers violated his due process rights by creating the danger he would be shot by White when they returned the gun to her. To prevail, Green had to prove that the state had an affirmative duty to protect him from White. The state is typically not required to "protect the life, liberty, and property of its citizens against invasion by private actors" because the due process clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Under the "state-created danger exception," however, the state can be responsible for an injury by a private party if the state plays a part in the danger or renders the plaintiff more vulnerable to such danger. *Id.* at 201, 109 S.Ct. 998; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir.1997).

We look to four factors to decide if the state-created danger exception is met: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authori-

ty to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Id.* at 908; *see also Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir.1996). The district court held that Green failed to meet the fourth factor, and we agree.

The Supreme Court held that the fourth factor was not met in a similar situation in *DeShaney.* There, a local services agency temporarily took custody of a child away from his abusive father, then returned the child to his father while conducting home visits for six months. 489 U.S. at 201, 109 S.Ct. 998. About nine months after the home visits ended, the father killed the child. *Id.* The *DeShaney* Court stated:

> That the State once took temporary custody of [the child] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect [the child].

*Id.*

The police officers similarly took temporary control of a volatile and dangerous situation between Green and White by holding her gun. They then returned the gun to her when they believed the situation was under control. About a month later, White shot Green in the leg with the gun. When the officers returned the gun to White, it placed Green in no worse position than he would have been in with-

1. We have jurisdiction over this motion to dismiss under 28 U.S.C. § 1291. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir.1993). We exercise plenary review over the grant of a motion to dismiss; such review means that we "accept all factual allegations in the com-

plaints and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs. We may affirm only if it is certain that no relief could be granted under any set of facts which could be proven." *Id.*

out their temporary intervention, and that temporary intervention did not create any guarantee of Green's future safety.

In addition, the shooting here was too remote from the officers' allegedly wrongful acts to establish proximate cause. *See Sheets v. Mullins*, 287 F.3d 581, 588 (6th Cir.2002) (holding that a child's death was too remote from a police officer's investigatory visit four days earlier). Accordingly, the district court properly found that the City defendants' action did not create any danger to Green, and denied his claim under the state-created danger theory.

### B. Municipal policy claim

Green also argued that the City violated his due process rights because it failed to "implement the common sense policy" that police officers keep all unregistered firearms confiscated from unlicensed owners during domestic disturbance investigations where the officers are told that the owner had previously used the firearm to assault the victim. The district court held that the City could not be liable for a Fourteenth Amendment violation unless individual police officers were found liable. There is no such liability here because the "state-created danger" claim was meritless.

Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a city can be liable for an unconstitutional policy or custom carried out by its employees. However, a claim for damages under this theory generally cannot lie unless an individual employee is found to have violated constitutional rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam). There is an exception, however, when a claim against a municipal entity is based on a different theory requiring lesser intent than the claim against the municipal em-

ployee(s). *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir.1994).

Inasmuch as Green bases the City's liability on the officers' failure to retain the confiscated gun, the officers' liability is the predicate for the City's liability. The district court properly found that *Heller* controlled and dismissed this claim against the City.

### III.

For all of the above reasons, we will affirm the district court's judgment.